IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DON ROSS                                              PLAINTIFF

            v.              Civil No. 07-2115

JOHN M. SELIG, DIRECTOR OF
ARKANSAS DEPARTMENT OF HUMAN
SERVICES, both individually and
official capacity;  MR. BERNARD
PIGHEE, both in his individual
and official capacity;  MR.
BRECK HOPKINS, both in his
individual and official capacity;
MR. CHARLES MOORE, both in his
individual and official capacity;
MR. CHARLES HICKS, both in his
individual and official capacity;
MS. LISA MCGEE, both in her
personal and official capacity; and
as yet undiscovered JANE and JOHN
DOES, both in their individual and
official capacities                                   DEFENDANTS

                    O R D E R

     Now on this 2nd day of February, 2009, comes on for
consideration **Defendant's Motion For Summary Judgment** (document
#22), and from said motion, the supporting documentation, and the
response thereto, the Court finds and orders as follows:

     1.  Plaintiff's Complaint alleges that defendants deprived
him of due process in connection with his termination from state
employment, and that his termination violated Arkansas public
policy.  He seeks injunctive relief, compensatory and punitive
damages, costs and attorney's fees.

2.   Defendants now move for summary judgment, contending that the Eleventh Amendment bars plaintiff's claims against defendants in their official capacities; that plaintiff did not have a constitutionally protected interest in his employment to support a procedural due process claim;  that there are no facts to support a substantive due process claim; that plaintiff had no contract with his employer and the U.S. Constitution prohibits only impairment of contract by legislative action, so plaintiff cannot maintain an impairment of contract claim; that the Court should not exercise supplementary jurisdiction over plaintiff's state law claim; that no public policy was violated by plaintiff's termination; that they are entitled to statutory immunity; and that they are entitled to qualified immunity.

Plaintiff responds first, that he should be allowed to take discovery before the Court rules on the pending motion, and second, that none of defendants' arguments have merit.

3.   Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  **Walsh v. United States**, **31 F.3d 696 (8th Cir. 1994)**.  Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of

the nonmoving party. **Hardin v. Hussmann Corp.**, **45 F.3d 262 (8th Cir. 1995).** The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op**, **838 F.2d 268 (8th Cir. 1988).**

4. Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute. From those statements, the following significant undisputed facts are made to appear:

* Plaintiff Don Ross ("Ross") is a former employee of the Arkansas Department of Human Services ("DHS").

* Ross did not have a contract at DHS, but was, instead, an "at will" employee.

* DHS is an agency of the State of Arkansas.

* Defendant John H. Selig is the Director of DHS.

* Defendant Bernard Pighee is Administrator of the Employee Relations Office for DHS.

* Defendant Breck Hopkins ("Hopkins") was, at the time of Ross' termination, Chief Deputy of Legal Operations for DHS.

* Charles Moore is a grievance officer for DHS.

* Defendant Charles Hicks was, at the time of Ross' termination, Chief Counsel for DHS.

-3-

* Defendant Lisa McGee ("McGee") is Deputy Counsel of County Legal Operations for DHS.

* Ross served as an attorney for DHS. His only clients were DHS and its divisions.

* As part of his duties, Ross was assigned to represent DHS in a dependency-neglect case referred to as the "L" Case.

* On or about September 7, 2006, the "L" Case came on for adjudication before Crawford County Circuit Judge Mike Medlock. Ross appeared at the hearing without any evidence or witnesses to support DHS' position, and asked Judge Medlock to dismiss the case.[1]

* As a result of information about the "L" Case, McGee placed Ross on administrative leave and began a review of his case files.

* On one occasion, Ross filed a motion to set aside an order in a case without knowing anything about the case.[2]

* McGee terminated Ross on October 17, 2006.

* On or about October 23, 2006, Ross filed a grievance with DHS, challenging his termination.

---

[1]Ross offers a sworn Declaration to the effect that he forgot to issue subpoenas in this case because the parents were divorcing, the father was under court order to have no unsupervised contact with the children, and he believed the children were no longer at risk.

[2]Ross states that he was performing a ministerial act under a standing order to file a motion to dismiss any order in a FINS case which required DHS to pay for services to rehabilitate the parents rather than to prevent removal of children from the home.

-4-

* Hopkins conducted a fact finding conference on January 4, 2007, with regard to Ross' grievance.

* Ross objected to Hopkins serving as the fact finder, because Hopkins' signature appeared on a request for personnel action relating to Ross' termination (DHS Form 1161) as the Chief Counsel's designee.

* Hopkins overruled Ross' objection to his service, giving three reasons:  (1) he took no part in the decision to terminate Ross;  (2) at the time of the fact finding hearing, his knowledge of the facts was limited to information in the record; and (3) DHS Form 1161 requires the division director or designee to hold the fact finding conference.

* On or about January 25, 2007, Hopkins issued a decision upholding Ross's termination.

* Ross appealed his termination to the Arkansas State Grievance Appeal Panel ("Grievance Appeal Panel").

* On August 8, 2007, Panel B of the Grievance Appeal Panel convened to hear Ross' grievance.

* On August 21, 2007, the Grievance Appeal Panel upheld Ross' termination.

* DHS has an Employee Handbook which includes employee discipline policy, minimum conduct standards policy, mediation/grievance policy, and performance evaluation/CLIP policy.  The Employee Handbook is attached to Defendants'

Statement Of Undisputed Material Facts, and will be referred to as needed in this Order.

5.   The foregoing undisputed facts are sufficient to resolve all the issues now pending before the Court, and the Court, therefore, finds no basis to allow the parties to engage in discovery, which would only consume their resources with no prospect of altering the outcome of the case.   Plaintiff's suggestion that he be allowed to take discovery before the Court rules on the pending motion is, therefore, denied.

6.   The Court turns first to defendants' argument that the Eleventh Amendment bars Ross' claims against defendants in their official capacities.   Ross contends that these claims may proceed because, as against the defendants in their official capacities, he seeks only injunctive relief.

The Eleventh Amendment bars a suit for injunctive relief against state agencies.

> While under the doctrine set forth in *Ex parte Young,* state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to state agencies.

**Monroe v. Arkansas State University**, **495 F.3d 591, 594 (8th Cir. 2007)** (internal citation omitted).

When a public official (such as defendants here) is sued in his or her official capacity, the suit is in essence a suit against the entity of which the official is an agent.   **Monell v.**

-6-

**Department of Social Services of City of New York**, 436 U.S. 658

**(1978)**.   Under **Monroe**, summary judgment is appropriate on Ross'

claims against all defendants in their official capacities.

7.   Defendants next claim that Ross did not have a

constitutionally protected interest in his employment and,

therefore, cannot maintain a procedural due process claim.

As the Eighth Circuit explained in **Johnson v. City of West**

**Memphis**, 113 F.3d 842, 843 (8th Cir. 1997):

> [t]he Due Process Clause requires the government to
> provide an employee with procedural due process if the
> employee stands to lose a constitutionally protected
> property or liberty interest.  For a property interest
> to exist, the public employee must have a legitimate
> claim of entitlement to continued employment.  An
> employee's liberty interests are implicated when, in
> connection with the employee's discharge, a government
> official makes accusations that seriously damage the
> employee's standing in the community or foreclose other
> employment opportunities.

This principle was reiterated in **Thompson v. Adams**, 268 F.3d

**609, 611 (8th Cir. 2001)**, which held that a plaintiff in

circumstances similar to those of Ross "was protected by the due

process guarantees of the fourteenth amendment only if he had 'a

legitimate claim of entitlement' to his job."

The question of whether a plaintiff in a due process claim

has a legitimate entitlement to continued employment is resolved

by the law of the state where he was employed.  **Board of Regents**

**of State Colleges v. Roth**, 408 U.S. 564, 577 (1972).  Under

Arkansas law, which applies in this case, "[t]he general rule is

-7-

that 'when the term of employment in a contract is left to the discretion of either party, or left indefinite, or terminable by either party, either party may put an end to the relationship at will and without cause'." **City of Huntington v. Mikles**, **96 Ark. App. 213, 240 S.W.3d 138 (2006).**

Ross concedes that his employment was at-will, but contends that he was fired in violation of Arkansas public policy.  In **Sterling Drug, Inc. v. Oxford, 294 Ark. 239, 743 S.W.2d 380 (1988),** the Arkansas Supreme Court held that an at-will employee has a cause of action for wrongful discharge if terminated in violation of a well-established public policy of the state.

In **Sterling Drug,** the Court explained that "a public policy discharge action is essentially predicated on the breach of an implied provision that an employer will not discharge an employee for an act done in the public interest."  Cases decided since **Sterling Drug** have fallen into this paradigm, finding the exception applicable mainly for whistle blowers (**Sterling Drug**); employees subject to retaliation for refusing sexual advances (**Island v. Buena Vista Resort, 352 Ark. 548, 103 S.W.3d 671 (2003)**); and employees subject to retaliation for making workers' compensation claims (**Wal-Mart Stores, Inc. v. Baysinger, 306 Ark. 239, 812 S.W.2d 463 (1991)**).

As the Court understands Ross' argument, he does not contend that he was terminated for some act done in the public interest,

or for refusing to do some act that would be against the public interest, either of which would bring him within the public policy exception. Ross contends, instead, that the federal government requires recipients of Social Services Block Grants to formulate personnel policies necessary for the proper and efficient operation of the agencies that administer the federal funds, and that it would "make[] no sense that the [federal government] would require every public welfare agency that receives federal funding to adopt personnel policies, and then permit them to completely disregard them" based on the at-will nature of the relationship.

Ross is correct that the federal government imposes certain requirements on the states to receive federal funds.[3] The Court is not persuaded, however, that Ross can graft a public policy exception to Arkansas' at-will doctrine onto these statutes. Defendants have submitted a copy of the Employee Handbook stating that DHS employees are "hired for a specific job based on a job description developed by the Department of Finance and

---

[3] Ross cites **42 U.S.C. §1202(a)(5)**; **42 U.S.C. §246(a)(2)(F)**; and **42 U.S.C. §302(a)(5)**. The first of these statutes deals with federal grants for aid to the blind, and provides that a State plan for aid to the blind must provide "such methods of administration (including . . . methods relating to the establishment and maintenance of personnel standards on a merit basis . . .) as are found by the Secretary to be necessary for the proper and efficient operation of the plan."

**Section 246** deals with public health planning grants, and provides that in order to be approved for such a grant, a State plan must "provide such methods of administration (including methods relating to the establishment and maintenance of personnel standards on a merit basis . . .) as are found by the Secretary to be necessary for the proper and efficient operation of the plan."

**Section 302** deals with grants for old age assistance, and the cited subsection provides that a state plan for old-age assistance must provide "methods of administration (including methods relating to the establishment and maintenance of personnel standards on a merit basis. . . .) as are found by the Secretary to be necessary for the proper and efficient operation of the plan. . . ."

-9-

Administration" and that "supervisors will develop a functional job description that more specifically defines each employee's responsibilities and becomes the basis of their Personnel Performance Evaluation."  The Personnel Performance Evaluation System is designed "to improve employee performance" and "to ensure that all employees are aware of their duties and the standards by which they will be evaluated at the end of the rating period."

In addition, the defendants attach copies of employee discipline procedures, minimum conduct standards, and a career ladder incentive program (described as "a competency-based system that incorporates performance principles by awarding promotions and bonus payments if employees meet and apply the criteria established for their specific classification").

Given these policies, the Court finds it without genuine dispute that DHS has established and maintained "personnel standards on a merit basis" as required by the federal statutes cited by Ross.  That being the case, Ross' public policy exception argument fails, and with it, his claim to procedural due process.

Ross' attempt to base his due process claim on a liberty interest requires a showing of "accusations that seriously damage the employee's standing in the community or foreclose other employment opportunities."  Ross averred in a sworn Declaration that McGee had classified his termination as one involving

"extreme violations of conduct," which prevents him from ever being re-employed by DHS, and which "has for all practical purposes black balled me from being hired by any Agency within this State, or outside of the State for that matter."

In order to establish a constitutional right to due process based on a protected liberty interest, Ross must show that he was stigmatized by the allegations which resulted in his discharge; that defendants made those allegations public; and that he denied the allegations. **Putnam v. Keller**, **332 F.3d 541, 546 (8th Cir. 2003).**

The stigma contemplated must come from accusations "so damaging as to make it difficult or impossible for the employee to escape the stigma" of the charges. *Id.* The Eighth Circuit has explained the quantum of stigma required to support a cause of action:

> An employee's liberty interest is implicated when the employer accuses the employee of 'dishonesty, immorality, criminality, racism, and the like.' On the other hand, no liberty interest of constitutional significance is implicated when 'the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance.'

**Mercer v. City of Cedar Rapids**, **308 F.3d 840, 845 (8th Cir. 2002).**

The facts in this case will not support a liberty-based due process claim. There is no indication that Ross was ever considered -- much less reported -- to have acted dishonestly, immorally, criminally, or with racial animus, or with any other

-11-

motive in that category.  His problems with defendants were entirely related to his performance as an employee.  Summary judgment on Ross' liberty-based due process claim is, therefore, appropriate.

8.   Defendants also argue that there are no facts to support a substantive due process claim.  The Court agrees.  In order to establish such a claim, Ross would have to show that defendants' conduct was "truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law." **Ganley v. Minneapolis Park and Recreation Bd.**, 491 F.3d 743, 749 (8th Cir. 2007)(citation and internal quotation marks omitted).  The case at bar involves a dispute over whether defendants were legally justified in terminating Ross for what they perceived as shortcomings in his performance at work.  Such a dispute in no way rises to the level of a substantive due process violation. Summary judgment will be granted as to this claim.

9.   In response to defendants' argument that Ross cannot establish an impairment of contract claim, Ross explains that he does not contend defendants impaired his contract with DHS, since he did not have such a contract, but rather that his termination prevented him from representing clients in DHS matters for one year following termination.  He does not explain how this is actionable, other than to say that it "forecloses other employment opportunities."

-12-

Ross cites **Johnson v. City of West Memphis**, *supra*, but that case will support his proposition only where foreclosure of employment opportunities is related to "accusations." The allegation here is that Ross "was advised by a direct supervisor while an employee of the Office of Chief Counsel that he was prohibited from engaging in any practice of law which would cause him to appear in any Court proceeding opposed to the Department of Human Services for one year after his termination date." (Complaint, ¶42.)

Defendants admit "that former employees of the Office of Chief Counsel are prohibited from representing clients in matters opposed to the Department of Human Services for one year following termination." (Defendants' Answer, ¶42.) This would, it appears, be true even if the employee left DHS voluntarily, and does not implicate any constitutional right. Summary judgment is, therefore, appropriate on the impairment of contract claim.

10.  Defendants contend that the Court should not exercise supplementary jurisdiction over plaintiff's state law claim, on their assumption that they will prevail in the pending motion as to Ross' constitutional claims. While defendants are correct that the Court can dismiss a state law claim over which it has supplemental jurisdiction when it dismisses all claims over which it has original jurisdiction, **28 U.S.C. §1367(c)**, it is not required to do so, and in this case it would not promote judicial

-13-

efficiency to do so.  The analysis in ¶7, *supra*, makes it clear that Ross cannot prevail on a state law claim of wrongful termination based on an alleged public policy exception to the Arkansas at-will doctrine.  For that reason, the Court finds that summary judgment is appropriate on Ross' state law claim of wrongful termination.

11.  Defendants contend that they are entitled to statutory immunity pursuant to **A.C.A. §19-10-305(a)**, which provides that employees of the State are immune from liability and suit "except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment."  Were there any claims upon which summary judgment was not being granted by this Order, the Court believes this statute would be triggered.  Nothing more need be said, since all claims are being disposed of by this Order.

12.  Finally, defendants contend that they are entitled to qualified immunity.  The Court agrees.  Given its conclusion that defendants did not violate any constitutional right of Ross, they are entitled to qualified immunity.  **Bonner v. Outlaw, --- F.3d ---, 2009 WL 48223 (8th Cir. 2009).**

13.  There remain at this point only Ross' claims against the unidentified John and Jane Doe defendants.  Given that Ross cannot bring himself within the purview of the causes of action

-14-

alleged in his Complaint as to any of the defendants (and it appears he has named all those in the chain of command and appeal, the Court sees no realistic possibility that if a Doe defendant were identified, Ross would have a viable claim against him or her. For that reason, the Court will dismiss Ross' claims against the Doe defendants without prejudice.

**IT IS THEREFORE ORDERED** that **Defendant's Motion For Summary Judgment** (document #22) is **granted,** and plaintiff's claims against John M. Selig, Bernard Pighee, Breck Hopkins, Charles Moore, Charles Hicks, and Lisa McGee are hereby **dismissed with prejudice.**

**IT IS FURTHER ORDERED** that plaintiff's claims against "undiscovered Jane and John Does" are hereby **dismissed without prejudice.**

**IT IS SO ORDERED.**

<u>/s/Jimm Larry Hendren</u>
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE